UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21896-Civ-COOKE/GOODMAN

MELANIUS SYLVESTER,

    Plaintiff,

vs.

50 STATE SECURITY US ASSOCIATE, INC.
and MIAMI DADE COUNTY,

    Defendants.
                                     /

## OMNIBUS ORDER ON MOTIONS

THIS MATTER is before me on Defendant Miami Dade County's ["County"] Motion to Dismiss (ECF No. 18), Plaintiff's Motion for Leave to File Amended Complaint ("Plaintiff's First Motion") (ECF No. 23), Defendant 50 State Security Service, Inc.'s ["50 State"][1] Motion to Dismiss Plaintiff's Complaint or Alternatively for Summary Judgment (ECF No. 24), and Plaintiff's Motion for Leave to File Amended Complaint ("Plaintiff's Second Motion") (ECF Nos. 26, 27).[2] I have reviewed the Motions, the responses and reply thereto, the record, and the relevant legal authorities. For the reasons discussed below, the County's Motion is granted, Plaintiff's First Motion is granted, 50 State's Motion is granted in part and denied in part, and Plaintiff's Second Motion is granted in part and denied in part.

    **I.**    **BACKGROUND**

Plaintiff brings this wrongful termination action under 42 U.S.C. § 1983, alleging that Defendants wrongfully terminated his employment with 50 State. Compl., p. 5, ECF No. 1. Plaintiff worked for 50 State as a Property Protection Officer ("PPO") at the Earlington Heights Metrorail Station. *Id.* at 6. Plaintiff alleges that 50 State had a contract to provide such services with the County's Transit Safety and Security Department. *Id.* at 5. Plaintiff claims that he reported to his supervisors that another supervisor was fraudulently reporting his overtime

---

[1] 50 State asserts it sold its security business and is now operating as TL37. For ease of reference and consistency with Plaintiff's Complaint, I will refer to Defendant as 50 State.

[2] Docket Entries 26 and 27 appear to be seeking the same relief; the only difference between the two motions is that Docket Entry 27 includes the substance of Plaintiff's proposed amended complaint.

1

hours. *Id.* at 6. As a result of that information being shared with the County, Plaintiff alleges that Paul (Pablo) Castillo, the manager of the Safety and Security Department, intentionally excluded him from eligibility to work in the renewed security contract for 2015. *Id.* Plaintiff then contacted an individual within the County's Executive Department to determine why he was excluded and was shortly thereafter reinstated to the contract. *Id.* Plaintiff alleges that County employees Eric Muntum, Lazaro Dominguez, and Anillo Eddy retaliated against him by harassing him with unsubstantiated information and citations after he was reinstated to the contract. *Id.* at 8–9.

On September 9, 2015, while working as a PPO at the Earlington Heights Station, Plaintiff was involved in an incident. *Id.* at 6. According to Plaintiff, a customer assaulted him with an 8-lb phone and a weapon; in response, Plaintiff drew and discharged his weapon. *Id.* Plaintiff states he was wrongfully arrested and charged after the incident. *Id.* A human resources manager for 50 State interviewed Plaintiff after the incident and advised him that he would be sent home and, depending on the outcome of the case, would be reinstated to his job and reimbursed for his legal fees and the time he missed from work. *Id.*

Prior to his criminal case being resolved, Plaintiff received a letter from his health insurance carrier notifying him that his coverage was canceled because 50 State had terminated his employment. *Id.* at 7. Plaintiff alleges he never that received a termination letter from 50 State and therefore was unable to apply for unemployment. *Id.*

After Plaintiff's criminal case was dismissed on July 25, 2016, he contacted Fred Taylor, 50 State's project manager of the Miami Dade Metrorail and Mover System Security Contract. *Id.* Mr. Taylor told Plaintiff that he would have human resources contact him regarding reinstatement. *Id.* However, no one ever contacted Plaintiff, despite several calls and emails. *Id.* Plaintiff states that he believes the Chief of the Safety and Security Department at the County was "aiding and assisting the inspector to retaliate against him." *Id.* at 8. As of the date of Plaintiff's Complaint, 50 State had not reinstated him, paid his vacation, nor issued his uniform refund. *Id.*

## II. THE COUNTY'S MOTION TO DISMISS AND PLAINTIFF'S FIRST MOTION

The County moves to dismiss Plaintiff's Complaint on two bases. First, the County moves to dismiss based on the fact that Plaintiff served Defendant three calendar days, or one business day, after the date listed in my Order Denying Plaintiff's Motion for Entry of Default

Judgment ("Order") (ECF No. 14). If a plaintiff fails to serve a defendant within the timeframe established by Rule 4(m), a court may extend the time period to serve defendants if the plaintiff shows good cause for failing to serve defendants timely. *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007). "Even in the absence of good cause, a district court has the discretion to extend the time for service of process." *Id.* (citing *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005); *Henderson v. United States,* 517 U.S. 654, 663 (1996)). Plaintiff initially served the County timely, but improperly. *See* Order. However, I granted Plaintiff an extension of time to serve Defendants, after which Plaintiff appears ultimately to have served the County properly, albeit one business day outside the extended deadline. *See* Order. The County has not alleged any prejudice or harm from having been served one business day after the deadline; I therefore find that the County has been properly and timely served and will not dismiss the Complaint on that basis.

The County's second argument for dismissal is that Plaintiff has not properly pleaded a claim against it. "*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). However, the leniency shown to *pro se* litigants "does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998) (citation omitted), *overruled on other grounds*, *as recognized in Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Liberally construing Plaintiff's Complaint, Plaintiff alleges that the County violated 42 U.S.C. § 1983 when some of its employees allegedly retaliated against him and harassed him after he was reinstated to the Contract after reporting overtime violations to his supervisor. "42 U.S.C. § 1983 creates a private right of action for deprivations of federal rights by persons acting under color of state law." *Hallett v. Ohio*, 711 F. App'x 949, 951 (11th Cir. 2017) (citing 42 U.S.C. § 1983). However, "[a] county does not incur § 1983 liability for injuries caused solely by its employees." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). "A plaintiff seeking to hold a municipality liable under § 1983 must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* at 1290 (quoting *Wayne v. Jarvis*, 197 F.3d 1098, 1105 (11th Cir. 2004)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality . . . . A custom is a practice that is so settled and permanent that it takes on the force of law." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005). The County

contends that Plaintiff has not alleged any facts supporting an inference that the County had a policy or custom that led to a violation of Plaintiff's rights. I agree. Plaintiff has alleged only that three County employees retaliated against him and harassed him "with unsubstantiated information and citations" after he was reinstated to the service contract, and that he "believes" one of these employees "aided and assisted the inspector" in retaliating against him. This does not amount to a policy or custom sufficient to hold the County liable under § 1983.

In response to the County's Motion, Plaintiff requests leave to file an amended complaint. *See* First Motion, ECF No. 23. "When moving the district court for leave to amend [his] complaint, the plaintiff must set forth the substance of the proposed amendment or attach a copy of the proposed amendment to [his] motion." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). Plaintiff did not attach a copy of an amended complaint, nor has he "set forth sufficiently the substance of [his] proposed amendment." *Id.* In fact, the Complaint attached to his First Motion is simply a copy of his original Complaint. However, had Plaintiff not filed a motion for leave to amend, I would likely have granted Plaintiff leave to file an amended complaint given his *pro se* status. Plaintiff should not be in a worse position for having filed a motion for leave to amend than had he not filed such a motion. Accordingly, the County's Motion is granted and Plaintiff's First Motion for Leave to Amend is granted as outlined below. *See infra* V. Conclusion.

### III. 50 STATE'S MOTION TO DISMISS AND PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND

#### A. Lack of Subject Matter Jurisdiction

50 State moves to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction because Plaintiff has not alleged that 50 State acted under color of state law as necessary to state a viable § 1983 claim. "[I]t is well settled that a federal court is obligated to inquire into subject matter jurisdiction . . . whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "[A] federal court may dismiss a federal question claim for lack of subject matter jurisdiction only if: (1) the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction; or (2) such a claim is wholly insubstantial and frivolous." *King v. Epstein*, 167 F. App'x 121, 122 (11th Cir. 2006) (quoting *Blue Cross & Blue Shield of Ala. v. Sanders,* 138 F.3d 1347, 1352 (11th Cir. 1998)). "A claim is 'wholly insubstantial and frivolous' where it 'has no plausible foundation, or

4

if the court concludes that a prior Supreme Court decision clearly forecloses the claim.'" *Id.* (quoting *Sanders*, 138 F.3d at 1352).

"42 U.S.C. § 1983 creates a private right of action for deprivations of federal rights by persons acting under color of state law." *Hallett v. Ohio*, 711 F. App'x 949, 951 (11th Cir. 2017) (citing 42 U.S.C. § 1983). "To prevail on a § 1983 claim, 'a plaintiff must demonstrate both (1) that the defendant deprived h[im] of a right secured under the Constitution or federal law and (2) that such a deprivation occurred under color of state law.'" *Id.* (quoting *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "State action is a jurisdictional prerequisite [in a viable § 1983 action.]" *King*, 167 F. App'x at 122 (citing *Nail v. Cmty. Action Agency of Calhoun Cty.*, 805 F.2d 1500, 1501 (11th Cir. 1986) (per curiam); *Rayburn ex rel. Rayburn v. Hogue,* 241 F.3d 1341, 1347 (11th Cir. 2001)).

Plaintiff alleges that both Defendants are either agents of Miami Dade County or direct employees of the County. Compl., p. 4. However, "[o]nly in rare circumstances can a private party be viewed as a '[S]tate actor' for section 1983 purposes." *Rayburn*, 241 F.3d at 1347 (quoting *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir. 1992)). The particular conduct at issue here is Plaintiff's termination and/or lack of reinstatement after the incident at Earlington Heights Metrorail Station. "Thus, the issue is whether [50 State's] personnel decisions may be fairly attributable to the [County]" so as to be subject to § 1983 liability. *Allocco v. City of Coral Gables*, 221 F. Supp. 2d 1317, 1374 (S.D. Fla. 2002), *aff'd*, 88 F. App'x 380 (11th Cir. 2003). The Eleventh Circuit employs "three distinct tests in determining whether the actions of a private entity are properly attributable to the state[:] . . . (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test." *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1277 (11th Cir. 2003) (quoting *Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993)). Plaintiff has not alleged facts which support any of these tests.

"The public function test limits state action to instances where private actors are performing functions 'traditionally the exclusive prerogative of the state.'" *Willis*, 993 F.2d at 840 (quoting *Nat'l Broad. Co., Inc. v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022, 1026–27 (11th Cir. 1988)). The alleged unconstitutional conduct in this case was Plaintiff's termination; however, the act of terminating Plaintiff's employment was not a result

of 50 State functioning as security or police, but from its conduct as an employer. *Allocco*, 221 F. Supp. 2d at 1374. The public function test therefore does not apply.

"The state compulsion test limits state action to instances where the government 'has coerced or at least significantly encouraged the action alleged to violate the Constitution.'" *Focus*, 344 F.3d at 1277 (quoting *Willis*, 993 F.2d at 840). Plaintiff's only factual allegations other than his conclusory "belief" that a County employee aided in 50 State's retaliation against him is that a manager from the County's Safety and Security Department excluded him from the working on the renewed security contract. Compl., p. 6. But this alleged exclusion appears to have taken place sometime in 2014, at least nine months prior to the alleged incident. *Id.* Plaintiff alleges no other facts regarding the County's involvement in Plaintiff's termination or the denial of his reinstatement. Even construing Plaintiff's Complaint liberally, the facts as alleged do not lead to a reasonable inference that the County coerced or significantly encouraged 50 State's decision to fire him or to deny his reinstatement. Similarly to the public function test, the state compulsion test does not apply.

Lastly, "[t]he nexus/joint action test applies where the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Focus*, 344 F.3d at 1277 (quoting *Willis*, 993 F.2d at 840). Courts evaluate several factors in determining whether a public and private entity are so necessarily intertwined as to render the private entity subject to § 1983 liability, including whether:

> (1) the public and private entities are separate and distinct under the law; (2) the private entity had discretion to hire and fire employees; (3) the private entity was responsible for maintenance and repair of its own facilities; (4) the private entity had the right to make its own rules and regulations; (5) the private entity agreed to indemnify the public entity from liability; and (6) the private entity leased property from the public entity.

*Allocco*, 221 F. Supp. 2d at 1376 (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 842–43 (1982) (identifying factor six); *Patrick v. Floyd,* 201 F.3d 1313, 1315 (11th Cir. 2000) (identifying factors one through five)). Plaintiff has not alleged any facts denying any of the aforementioned criteria.[3] Therefore, 50 State is not a state actor pursuant to the nexus/joint action test.

---

[3] 50 State has submitted an affidavit from one of its shareholders outlining how 50 State does not meet many of the factors in the nexus/joint action test. *See* Ex. A, ¶¶ 3–6, ECF No. 24-1. However, because Plaintiff has not alleged any facts that would support an inference that 50 State met the nexus/joint action test, I do not need to rely on 50 State's affidavit.

Accordingly, the Complaint contains no facts from which I can draw an inference that 50 State is a state actor for § 1983 purposes;[4] I am therefore without jurisdiction to entertain Plaintiff's § 1983 claim. *Hallett v. Ohio*, 711 F. App'x 949, 951 (11th Cir. 2017) ("The district court did not err in dismissing Hallett's complaint for lack of subject matter jurisdiction" where the plaintiff "failed to allege that the defendants acted under color of state law, and failed to substantiate his claim with anything other than conclusory allegations."); *Lucy v. Grow*, 698 F. App'x 575, 576 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 2018 (2018) ("§ 1983 provides no relief here because there is no allegation that [the defendant] acted under color of state law. . . . We therefore agree with the district court that it lacked subject-matter jurisdiction."); *King v. Epstein*, 167 F. App'x 121, 122 (11th Cir. 2006) ("State action is a jurisdictional prerequisite, and we must therefore dismiss the [plaintiffs'] section 1983 claim in its absence.") (citing *Nail,* 805 F.2d at 1501; *Rayburn ex rel. Rayburn v. Hogue,* 241 F.3d 1341, 1347 (11th Cir. 2001)). Once again, Plaintiff has moved for leave to amend and has filed a response to 50 State's Motion; however, his arguments mainly address 50 State's claim that it is an improper defendant based on the sale of its security business. *See discussion infra*, III.C. 50 State May Be a Proper Defendant. Nevertheless, I will grant Plaintiff leave to amend his § 1983 claim against 50 State so long as he can allege facts, not conclusory statements, that 50 State was a state actor according to one of the legal tests explained above.

B.  **Failure to State Title VII Claim**

50 State also moves to dismiss Plaintiff's Complaint on the grounds that he has failed to properly allege a Title VII claim. Plaintiff's Complaint mentions Title VII, but it is not clear whether he is alleging a separate Title VII claim over and above his § 1983 claim, or whether he believes his Title VII claim is intertwined with, and the basis for, his § 1983 claim.

Notwithstanding, Title VII "prohibits an employer from discriminating against an employee 'because of such individual's race, color, religion, sex, and national origin.'" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 338 (2013) (quoting 42 U.S.C. § 2000e–3(a)). While Title VII also prohibits retaliation "because [an employee] has opposed . . . an unlawful employment practice . . . or . . . made a [Title VII] charge," *id.* (quoting 42. U.S.C. § 2000(e)–

---

[4] Because I find that Plaintiff has not sufficiently alleged state action, I do not address 50 State's argument that Plaintiff failed to state a violation of a federal statutory or constitutional right, although it seems clear that Plaintiff alleged a violation of his First Amendment right to free speech.

3(a)), the unlawful employment practices must still relate to discrimination based on race, color, religion, sex, and national origin. 42. U.S.C. § 2000(e)–3(a) (prohibiting discrimination "because [an employee] has opposed any practice made an unlawful employment practice *by this subchapter*") (emphasis added). In his Complaint, Plaintiff has not alleged that he is a member of a protected group, nor has he alleged that Defendants discriminated against him because of his membership in a protected group. 50 State moves to dismiss or for summary judgment on this basis. However, in Plaintiff's Response to 50 State's Motion, he attaches a Dismissal and Notice of Rights letter from the EEOC, as well as a Charge of Discrimination. *See* ECF No. 29, p. 4–8. While this documentation was not attached to his Second Motion to Amend, it indicates that he may have intended to file an independent Title VII action. I will therefore grant in part 50 State's Motion and dismiss Plaintiff's Complaint for failure to state a claim; however, I shall grant Plaintiff leave to amend to state a proper Title VII claim.

### C. 50 State May Be a Proper Defendant

50 State also argues that it is an improper Defendant because it sold its assets and liabilities to U.S. Security on July 8, 2016. As a result, 50 State claims that U.S. Security is the proper defendant in this action because Plaintiff's termination claim accrued on July 26, 2016—after his criminal case closed and he contacted 50 State to be reinstated. However, a brief review of Plaintiff's EEOC documents reveals that he also complained of various personnel actions that occurred prior to July 8, 2016. Accordingly, 50 State may be an appropriate Defendant in this action, as well as U.S. Security. 50 State's Motion is therefore denied insofar as 50 State is not entitled to dismissal or summary judgment on this issue.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** as follows:

1. The County's Motion to Dismiss (ECF No. 18) is **GRANTED**.
2. 50 State's Motion to Dismiss (ECF No. 24) is **GRANTED** *in part* and **DENIED** *in part*.
3. Plaintiff's Complaint is **DISMISSED** for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.
4. Plaintiff's first Motion for Leave to File an Amended Complaint (ECF No. 23) and Second Motion for Leave to Amend (ECF No. 26, 27) are **GRANTED**. Plaintiff

may file an amended complaint, **on or before October 1, 2018**, pleading facts which state a claim under Title VII and/or § 1983.

5. The Clerk shall **CLOSE** this case. I will reopen this case if Plaintiff files his amended complaint within the deadline.

**DONE and ORDERED** in Chambers, Miami, Florida, this day of 30th day of August 2018.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Melanius Sylvester,* pro se
*Jonathan Goodman, U.S. Magistrate Judge*